IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CORDRESE DEANTE PERRIN             *

      Plaintiff,                  *

vs.                                *

                                       CASE NO. 3:03-CV-106 (CDL)

THE CITY OF ELBERTON, GEORGIA,     *
Chief MARK WELSH, Individually
and in his Official Capacity,      *
Officer ROBERT KUPKOWSKI,
Individually and in his Official   *
Capacity, Officer S. SCHULTZ,
Individually and in his Official   *
Capacity, Captain J. HUNT,
Individually and in his            *
Official Capacity, and Sergeant
B. REED, Individually and in       *
his Official Capacity.
                                   *
      Defendants
                                   *

O R D E R

The Court presently has pending before it Defendants' Motion for Summary Judgment.  For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

BACKGROUND

On August 29, 2003, Defendant Robert Kupkowski, a police officer employed by the City of Elberton Police Department, visited the Kentucky Fried Chicken ("KFC") on Elbert Street in Elberton, Georgia. Kupkowski was accompanied by Detective Jason Gaddy, also an officer employed by the City of Elberton Police Department.  Both officers were off duty and in civilian clothes, and they arrived at the

restaurant in Gaddy's truck.  About the same time, Plaintiff arrived at the KFC, and he parked his car near Gaddy's truck.  Plaintiff was acquainted with Kupkowski because Kupkowski had stopped Plaintiff for traffic violations twice within the preceding week or two.  When Plaintiff exited his vehicle, he left the key in his vehicle and the engine running.  Kupkowski asked Plaintiff to turn off his vehicle.  When Plaintiff refused to do so, Kupkowski raised his voice and again asked Plaintiff to turn off his vehicle, telling Plaintiff that it was illegal to leave a vehicle unattended and running.[1]  Plaintiff refused to turn off his vehicle, and Kupkowski walked over to Plaintiff's car and removed the keys.  He made a short underhand throw at Plaintiff.  The keys hit Plaintiff in the chest, and Plaintiff caught the keys off his chest.  Plaintiff was not bruised, cut, or otherwise injured by the key toss.  There is some dispute as to whether Plaintiff spoke to Kupkowski after the key toss.  According to Kupkowski and Gaddy, Plaintiff yelled at Kupkowski.  Plaintiff denies yelling at Kupkowski.  After the key toss, Kupkowski did tell Plaintiff something like, "I'm the last person in this city you want to fuck with."  Following the

---

[1]Kupkowski apparently believed that O.C.G.A. § 40-6-201, which prohibits leaving a vehicle unattended with the engine running, applied to the situation.  However, the statute only applies to vehicles being operated on Georgia's public streets and highways.  It does not apply to vehicles on private property.

altercation, Kupkowski and Plaintiff walked away from each other and went separately into the KFC.[2]

   After the incident in the KFC parking lot, Plaintiff went to the Elberton Police Department to complain about the way Kupkowski treated him and to inquire about the legality of leaving his car running while it was unattended in the parking lot.  He spoke with Stephanie Hughes, a police officer with the City of Elberton Police Department, and Diane Fant, the clerk of court for the City of Elberton Police Department.  Plaintiff did not make a formal complaint at the time, but he did return the next day to do so.  There is some dispute as to exactly what Plaintiff told Hughes and Fant on August 29, but there is no dispute that Plaintiff told them something about Kupkowski.  According to Plaintiff, he said, "Kupkowski need to stop harassing me because he going to get what's coming to him."  (Pl.'s Dep. at 71.)  According to Hughes, Plaintiff said to tell "Gaddy's friend" (Kupkowski) not to "let him catch him out late at night."  (Hughes Dep. at 12.)  According to Fant, Plaintiff said, "tell the officer that is with Gaddy [Kupkowski], he better watch himself or he's going to get hurt."  (Fant Dep. at 7.)  After this exchange, Plaintiff left the police station.  Shortly after that, Kupkowski returned to the police station, and Fant told him what she heard Plaintiff say.

---

[2]The Elberton Police Department conducted an internal investigation of the incident and determined that Kupkowski violated Elberton Police Department policy by being abrupt and using profanity when speaking with Plaintiff.  A letter of reprimand was put into Kupkowski's file.

Kupkowski did not ask Hughes for an account of Plaintiff's visit to the police station.

Based on his conversation with Fant regarding Plaintiff's comments, Kupkowski went to Elbert County Magistrate Judge Lannie Simmons, seeking to secure a warrant for Plaintiff's arrest under Georgia's terroristic threats statute. Simmons declined to issue the warrant, advising Kupkowski that the Georgia terroristic threats statute did not apply because the alleged threat was not made in Kupkowski's presence.[3] When Kupkowski inquired about pursuing the arrest under the city's disorderly conduct ordinance, Simmons advised him to consult with the city attorney to determine whether he had probable cause under the ordinance.

The City of Elberton has an ordinance forbidding "Disorderly Conduct." The definition of disorderly conduct includes issuing "threats of violence" or behaving "in such a manner that the behavior or verbiage would place any city official in immediate fear of receiving injury or becoming the victim of violence." (Elberton, Ga. Ordinance § 28-4(d).) Kupkowski did not check with the city attorney regarding probable cause under the ordinance. Rather, he relied upon his own previous readings of the ordinance and determined that there

---

[3] It is not clear that Georgia's terroristic threats statute requires that the threat be directly communicated to the victim, although that is not an issue in the instant case. *See Wiggins v. State*, 171 Ga. App. 358, 358-360, 319 S.E.2d 528, 529-531 (1984) (reversing conviction under Georgia's terroristic threats statute, noting that threat need not be directly communicated to victim to support conviction so long as "the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim").

was probable cause to arrest Plaintiff based upon Plaintiff's comments to Hughes and Fant. Kupkowski completed a warrant application for Plaintiff's arrest, stating in his affidavit that Plaintiff had violated the disorderly conduct ordinance by "threatening R. Kupkowski by stating 'you tell him he better watch himself at night/he's gonna get hurt.'"

Kupkowski took the warrant application to Elberton City Court Judge Robert Johnson. Because Judge Johnson was not in when Kupkowski went to secure the warrant, Kupkowski left the warrant application with Judge Johnson's secretary. Kupkowski had never left a warrant for Judge Johnson in this manner, but he had done so with other judges. He would leave the warrant application with the judge and send the unsworn police report to the judge, then the judge would issue the warrant. After he left the warrant application for Plaintiff's arrest with Judge Johnson, Kupkowski left a note for Captain Jeff Hunt of the City of Elberton Police Department to deliver his police report regarding Plaintiff's alleged threat to Judge Johnson.

The warrant application consisted of two parts. The top half of the form contained the affidavit, which Kupkowski completed and signed as the prosecutor. It also contained a space for the City Recorder to sign, indicating that the affidavit was sworn and subscribed before him. On the warrant application for Plaintiff's arrest, that space was blank. The bottom half of the document contained a form for the

warrant, which Kupkowski completed.  Like the affidavit portion, the warrant portion of the form had a space for the City Recorder to sign, but that space was left blank on the warrant for Plaintiff's arrest.

Hunt later retrieved the warrant for Plaintiff's arrest from Judge Johnson's office when he went to have Judge Johnson sign a different warrant.  Hunt did not notice that Judge Johnson had not signed the warrant at all.  He testified that he had never received an unsigned warrant from Judge Johnson in eight years of securing hundreds of warrants from Judge Johnson in this manner.  When Hunt returned to the Police Department, he gave the warrant to City of Elberton police officer Scott Schultz to serve.  Because Schultz was acquainted with Plaintiff and knew where Plaintiff lived, he did not read the warrant.  Schultz, accompanied by Sergeant Barry Reed of the City of Elberton Police Department, went to Plaintiff's home and effectuated Plaintiff's arrest for disorderly conduct on September 2, 2003.  Reed never saw the warrant.  Kupkowski was not present at the arrest.  The arrest took place inside Plaintiff's home, and Plaintiff's mother admitted the officers into the home after being told that the officers had a warrant for Plaintiff's arrest. Plaintiff stated that Schultz and Reed were nice to him during the arrest and that they treated him with respect.  Plaintiff was handcuffed and taken to the Elberton Police Department, where he was fingerprinted and then put in a cell.  Plaintiff spent about an hour at the police department before his father came and posted a $500.00

property bond.  The disorderly conduct charge against Plaintiff was later dismissed.

Plaintiff brought this lawsuit under 42 U.S.C. § 1983 ("§ 1983"), claiming that: (1) Kupkowski, Hunt, Schultz, Reed, Police Chief Mark Welsh, and the City of Elberton violated Plaintiff's right to be free from unreasonable search and seizure pursuant to the Fourth Amendment of the United States Constitution; and (2) Kupkowski, Hunt, Schultz, Reed, Welsh, and the City of Elberton violated Plaintiff's "state created liberty interest of being free from unlawful deprivation of life, liberty or property" as protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  Plaintiff claims that the same acts and omissions giving rise to his § 1983 claims also give rise to claims under the Georgia constitution, specifically GA. CONST. Art. I, § I, ¶ I (due process clause) and GA. CONST. Art. I, § I, ¶ XIII (unreasonable search and seizure clause). Plaintiff also made a number of state law claims against the Defendants, including trespass, false imprisonment, false arrest, battery, assault, and intentional infliction of emotional distress.

## DISCUSSION

*1. Summary Judgment Standard*

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant should be granted summary judgment only if the evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

*2. Plaintiff's § 1983 Claims*

 *a. Rights Implicated by Defendants' Alleged Acts*

 To make a case under § 1983, Plaintiff must prove that he has been deprived by Defendants of a right, privilege, or immunity secured by the Constitution or a federal law, and he must prove that Defendants acted under color of state law. *See* 42 U.S.C. § 1983. It is undisputed in this case that Defendants acted under color of state law in applying for the arrest warrant and arresting Plaintiff. The remaining question is whether Plaintiff suffered a deprivation of any right, privilege, or immunity secured by the Constitution or a federal law. Plaintiff claims that Defendants violated his Fourth Amendment right to be free from unreasonable search and seizure by arresting him under a warrant that was invalid because (1) the officer who applied for the warrant did not swear to the affidavit of the warrant application and (2) the warrant was effectuated even though it had not been signed by a judge. In addition to his Fourth Amendment claims, Plaintiff alleges that Defendants violated "Plaintiff's state created liberty interest of being free of unlawful deprivation of life,

liberty or property" as protected by the Due Process Clause of the Fourteenth Amendment.  Plaintiff has not clearly addressed how his Fourteenth Amendment rights were violated.

The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *accord Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1267 n.15 (11th Cir. 2003) (applying this principle to address claims of an individual—who was "seized" when an officer shot him—under the Fourth Amendment).  Plaintiff claims that Defendants subjected him to an unreasonable seizure by arresting him under an invalid warrant.  The Fourth Amendment specifically provides a right against "unreasonable searches and seizures."  U.S.  CONST. amend. IV.  Therefore, Plaintiff's § 1983 claims are appropriately addressed under the Fourth Amendment's objective reasonableness standard.

b. *Plaintiff's Claims Against Individual Defendants*

i. *Qualified Immunity Standard*

Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law.  *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

9

In determining whether qualified immunity applies, the courts use a two-part test.  First, the court must determine whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If this question is answered in the negative, there is no need for further inquiry. *Id.* If, however, the facts establish violation of a constitutional right, the court must then determine whether the right was clearly established at the time of the officer's conduct. *Id.* A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739; *accord Saucier*, 533 U.S. at 202; *see also Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").  The unlawfulness of the action must be apparent in light of pre-existing law, but there is no requirement that the very action in question has been previously held unlawful. *Hope*, 536 U.S. at 739.

### ii. *Kupkowski's Warrant Application*

Kupkowski argues that he is entitled to qualified immunity in this case because (1) he was acting within the scope of his discretionary authority when he applied for the arrest warrant, (2) his application for the arrest warrant did not constitute a Fourth Amendment violation, and (3) even if it did, it would not be clear to

10

a reasonable officer in Kupkowski's situation that applying for the arrest warrant was unlawful.   Plaintiff does not dispute that Kupkowski was acting within the scope of his discretionary authority when he applied for the arrest warrant.   Plaintiff does contend that Kupkowski's action violated Plaintiff's Fourth Amendment rights and that the rights were clearly established when Kupkowski applied for the arrest warrant.

As a preliminary matter, it is important to note that an arrest warrant was required in this case.   The arrest took place inside Plaintiff's home, and Defendants have not shown that an exception to the warrant requirement existed in this case. *See United States v. Ramos*, 933 F.2d 968, 972 (11th Cir. 1991).   Therefore, it was necessary to obtain a warrant prior to arresting Plaintiff.

The question in this case is whether Kupkowski's application for the arrest warrant was objectively reasonable.   If it was, the application does not constitute a Fourth Amendment violation. *See Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).   An officer's application for an arrest warrant is not objectively reasonable if it creates the "unnecessary danger of an unlawful arrest." *Id*. at 345. Much of the parties' argument on the issue of Kupkowski's warrant application centers upon whether Kupkowski had arguable probable cause to arrest Plaintiff under the disorderly conduct ordinance.   It is true that to escape liability in this case, Kupkowski must have had arguable probable cause to arrest Plaintiff under the disorderly

11

conduct ordinance.  *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  However, even if Kupkowski had arguable probable cause to arrest Plaintiff, that is not the end of the inquiry.  If Plaintiff can show that another defect in the warrant application made Kupkowski's act in applying for the warrant objectively unreasonable, Plaintiff has established a Fourth Amendment violation.

In addition to his contention that Kupkowski did not have arguable probable cause to arrest him, Plaintiff raises another issue with the warrant:  Kupkowski's affidavit in the warrant application was unsworn.  The Fourth Amendment requires that arrest warrants be based "upon probable cause, *supported by Oath or affirmation*." U.S. CONST. amend. IV (emphasis added).  Only sworn statements and testimony may form the basis for a probable cause determination.  *Id.*; *accord Frazier v. Roberts*, 441 F.2d 1224, 1227 (8th Cir. 1971); *see also Haywood v. City of Chicago*, 378 F.3d 714, 718-19 (7th Cir. 2004) (finding that falsely sworn statement could not provide sole basis for finding of probable cause); *cf. Lopez v. United States*, 370 F.2d 8, 10-11 (5th Cir. 1966) (noting that sworn testimony of officer sufficed to establish probable cause even though insufficient affidavit did not).  The oath requirement is meant to impress upon the swearing individual a sense of obligation to tell the truth, the theory being that "those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so

12

impressed." *United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977); *see also United States v. Trainor*, 376 F.3d 1325, 1332 (11th Cir. 2004) (noting that oath "may induce a feeling of special obligation to speak the truth, and it may also impress upon the witness the danger of criminal punishment for perjury, to which the judicial oath or an equivalent solemn affirmation would be a prerequisite condition"). An oath or affirmation to support an arrest warrant reminds both the officer seeking the warrant and the judge issuing it of the importance and solemnity of the process involved, and it protects the person being arrested "'from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information.'" *United States v. Bueno-Vargas*, 383 F.3d 1104, 1110-1111 (9th Cir. 2004) (quoting *State v. Tye,* 248 Wis.2d 530, 636 N.W.2d 473, 478 (2001)).

Here, Kupkowski filed an unsworn warrant application. He did sign the application as the prosecutor, but he did not swear to it before Judge Johnson because Judge Johnson was not in his office when Kupkowski filed the application. The affidavit was not notarized. The affidavit did not state that Kupkowski signed it under penalty of perjury. It did not contain language indicating that it was made under oath or affirmation in the absence of the City Recorder's signature. There is no evidence that City of Elberton police officers are eligible to sign the place in the warrant application for the City

13

Recorder's signature, and even if Kupkowski had been eligible to sign in the place of the City Recorder, he did not do so. Kupkowski did not appear before Judge Johnson or otherwise communicate with Judge Johnson to offer sworn testimony about Plaintiff's alleged offense. Rather, Kupkowski left the warrant application with Judge Johnson's secretary and instructed his captain to provide Judge Johnson with Kupkowski's unsworn police report regarding the alleged disorderly conduct, expecting that Judge Johnson would sign the warrant without further action on Kupkowski's part. In other words, the facts viewed in the light most favorable to Plaintiff indicate that Kupkowski reasonably expected Judge Johnson to make a probable cause determination based solely on his warrant application, which was unsworn.

In the search warrant context, other courts have held that failure to meet the oath requirement is not necessarily fatal. *See, e.g., United States v. Hessman*, 369 F.3d 1016, 1022 (8th Cir. 2004); *United States v. Gordon*, No. 93-3836, 1995 WL 108988, at *4 (6th Cir. 1995); *United States v. Moore*, 968 F.2d 216, 223 (2d Cir. 1992). In these cases, the question arose in the context of the good faith exception to the exclusionary rule. In each case, the officer who applied for the warrant actually appeared before the judge (in person or via telephone), and the court found that failure to administer the oath was a mere oversight that was properly attributed to the judge who issued the warrant rather than the officer who applied for it.

14

*See Hessman*, 369 F.3d at 1022; *Gordon*, 1995 WL 108988, at *4.  The courts declined to suppress the evidence seized pursuant to the warrants, reasoning that the exclusionary rule was intended to deter police misconduct rather than to punish the errors of judges and magistrates.  *See, e.g., Hessman*, 369 F.3d at 1020.

Applying these cases in the arrest warrant context, it may be objectively reasonable for an officer to rely upon an arrest warrant issued by a judge even though the judge mistakenly failed to administer the oath to the complaining officer.  It may also be objectively reasonable for an officer to apply for a warrant by leaving the warrant application with the judge's secretary if the judge routinely required that officers applying for a warrant in this manner return to the judge's office or telephone the judge to make their statements under oath.  However, failure to administer the oath in this case was more than a mere oversight.  Kupkowski never appeared before Judge Johnson or otherwise communicated with him regarding this warrant.  And though there is no evidence that Kupkowski left the application with Judge Johnson's secretary to avoid swearing to the affidavit, there is evidence that Kupkowski left the warrant application with Judge Johnson's secretary with the expectation that it would be signed without a sworn appearance.  In other words, the facts viewed in the light most favorable to Plaintiff are that Kupkowski reasonably expected that Judge Johnson's only basis for

15

finding probable cause to arrest Plaintiff would be Kupkowski's unsworn affidavit and unsworn police report.

That the judge[4] or arresting officers did not correct the problem is irrelevant to the question whether Kupkowski's act of applying for the warrant was objectively reasonable.  *See Malley*, 475 U.S. at 346 n.9 (if officer's request for arrest warrant is "outside the range of the professional competence expected of an officer," the officer cannot "excuse his own default by pointing to the greater incompetence of the magistrate").  Because a probable cause determination cannot legally be predicated upon unsworn statements and because Kupkowski reasonably expected that Judge Johnson would issue an arrest warrant based solely upon his unsworn statements, Kupkowski's warrant application was not objectively reasonable and thus violated Plaintiff's Fourth Amendment rights because it created the "unnecessary danger of an unlawful arrest," or at a minimum, genuine issues of material fact exist as to whether a violation occurred.  *See Malley*, 475 U.S. at 345.

Having found that genuine issues of material fact exist to be tried as to whether Kupkowski violated Plaintiff's Fourth Amendment right against unlawful seizure, the Court must now address the second prong of the qualified immunity inquiry.  Kupkowski is not entitled to qualified immunity if he violated a right that was clearly

---

[4] There is no evidence that Judge Johnson actually approved the warrant.  The evidence does show, however, that the Judge or someone in his office returned the warrant application form to Hunt.

established at the time of his conduct.   *Saucier*, 533 U.S. at 201.
Again, a right is clearly established if it is "sufficiently clear
that a reasonable official would understand that what he is doing
violates that right." *Hope*, 536 U.S. at 739; *accord Saucier*, 533 U.S.
at 202.   The Fourth Amendment is clear that no warrants shall issue
"but upon probable cause, supported by Oath or affirmation." Georgia
law regarding arrest warrants meets the Fourth Amendment's oath
requirement because it clearly requires that warrants be issued based
on probable cause either on the judge's own knowledge or on the
information of others given to the judge under oath.   O.C.G.A. § 17-4-
40(a) (2004); *see also J. C. Penney Co. v. Green*, 108 Ga. App. 155,
157, 132 S.E.2d 83,84-85 (1963) (finding warrant was void because
justice of the peace issued it without having complaining officer
swear to truthfulness of allegations in the affidavit and noting that
before an affidavit "can become the basis of a legal proceeding it
must appear that an oath was actually administered to the affiant, or
that something was done by the affiant signifying that he consciously
took upon himself the obligation of an oath").   The City of Elberton
arrest warrant application form meets the oath requirement of the
Fourth Amendment and O.C.G.A. § 17-4-40(a) by requiring the person
swearing out a warrant to appear in person before the City Recorder
and give information providing the basis for the warrant under oath.
Therefore, it is sufficiently clear that a reasonable officer would
understand that his affidavit or other statement forming the basis for

17

an arrest warrant must be made under oath.  Kupkowski did not, however, make any statement forming the basis for Plaintiff's arrest warrant under oath.  Instead, based on the facts viewed in the light most favorable to Plaintiff, Kupkowski expected Judge Johnson to issue the arrest warrant based solely on the unsworn affidavit and unsworn police report.  For these reasons, Kupkowski is not entitled to qualified immunity for his act of applying for the arrest warrant.  Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claims against Kupkowski in his individual capacity is denied.

### iii. Arrest Pursuant to the Unsigned Warrant

The Court must next determine whether the officers who participated in Plaintiff's arrest violated Plaintiff's constitutional rights by arresting Plaintiff pursuant to an invalid warrant.  As previously discussed, an arrest warrant was required in this case because Plaintiff's arrest took place inside Plaintiff's home and Defendants have not shown that an exception to the warrant requirement existed in this case.  *See Ramos*, 933 F.2d at 972; *see also Payton*, 445 U.S. at 586 ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.").

In this case, Plaintiff claims that what purported to be a warrant under which he was arrested was facially invalid—and therefore insufficient to meet the warrant requirement—because it had not been signed by a judge.  Defendants Hunt, Schultz, and Reed argue that even

if the warrant was defective, they reasonably relied upon it because they believed that it had been signed.  They claim they had reason to believe that the warrant had been signed because Hunt had never received an unsigned warrant from Judge Johnson.

The Fourth Amendment contains no explicit signature requirement. However, it does require probable cause for the issuance of a warrant. Thus, while an unsigned warrant may not be *per se* insufficient under the Fourth Amendment, it must be clear to the arresting officers that the substantive requirements of the Fourth Amendment were met—that a neutral and detached magistrate made a finding of probable cause. *See United States v. Kelley*, 140 F.3d 596, 604 (5th Cir. 1998).  In *Kelley*, this issue arose in the context of a motion to suppress evidence obtained pursuant to a search warrant that was not signed or dated by the magistrate.  In that case, the officers presented affidavits and a search warrant application to the magistrate, and the magistrate read the search warrant application and affidavits prepared by the officers, questioned the officers about the documents, commented on the documents, and determined that probable cause existed.  *Id.* at 602 n.4.  The problem:  the magistrate forgot to sign and date the warrant.  The court found that the officers were objectively reasonable in relying upon the warrant because the officers seeking the warrant "took every step that could reasonably be expected of them."  *Id.* at 603.  Furthermore, the court refused "'to rule that an officer is required to disbelieve a judge who has

19

just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.'" *Id.* (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984)).

Typically, a judge conveys a finding of probable cause by signing a warrant. As *Kelley* teaches, in the absence of a judge's signature, a court may consider other evidence that the judge found probable cause and approved the warrant. In this case, as in *Kelley*, there is no judge's signature on the warrant relied upon to arrest Plaintiff. That is where the similarity ends. Unlike *Kelley*, there is no evidence that a probable cause determination was made in this case, and there is no evidence that Judge Johnson ever communicated with Hunt, Schultz, or Reed about this warrant. The evidence shows that Kupkowski did not appear before Judge Johnson to secure the warrant. Rather, he left the warrant with Judge Johnson's secretary. There is no testimony or statement from Judge Johnson that he found probable cause in this case and that his failure to sign the warrant was inadvertent. There is no evidence that Judge Johnson told Hunt (or Schultz or Reed) that he had found probable cause. The only interaction between the officers and Judge Johnson in this case: Kupkowski left an unsigned warrant application at Judge Johnson's office, and Hunt picked up the unsigned warrant application from Judge Johnson's office. Based upon the evidence before the Court, Judge Johnson did not convey a finding of probable cause to the officers.

Nonetheless, Hunt, Schultz, and Reed claim that their reliance upon the warrant was objectively reasonable because Hunt had never received an unsigned warrant from Judge Johnson.  It may be objectively reasonable for an officer who participated in every step of the process—prepared a warrant application, swore to it before the judge, answered the judge's questions, heard the judge indicate that the warrant was approved, and received the warrant application back from the judge—to rely upon an unsigned warrant.  In such a case, the judge has clearly communicated a finding of probable cause.  In this case, however, no such communication was made.  There is no signed warrant and no other indication that Judge Johnson made a probable cause determination.  Based on the evidence before the Court, all that happened is this:  someone in Judge Johnson's office gave the unsigned warrant application to Hunt when Hunt stopped by to take care of some other paperwork.  Because the warrant provided their only means of determining whether a probable cause determination had been made, the Court cannot find as a matter of law that it was objectively reasonable for Hunt, Schultz, and Reed to rely upon the arrest warrant without taking one moment to scan the document for Judge Johnson's signature.  If they had done so, they would have seen two conspicuous blanks where a judge's signature should have been and realized that the warrant was not valid.

For these reasons, the Court finds that at a minimum, genuine issues of material fact exist as to whether Hunt, Schultz, and Reed

violated Plaintiff's Fourth Amendment rights when Schultz and Reed arrested Plaintiff pursuant to the unsigned warrant which Hunt retrieved from Judge Johnson's office and assigned to Schultz and Reed. Furthermore, the Court finds that Hunt, Schultz, and Reed are not entitled to qualified immunity in this case because the law at the time of Plaintiff's arrest was clearly established that to be valid, a warrant must indicate that the substantive requirements of the Fourth Amendment have been met—that a neutral and detached magistrate made a finding of probable cause. Indeed, Defendants do not argue that they were entitled to arrest Plaintiff without a valid, signed warrant. They simply maintain that they reasonably thought the warrant was signed. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claims against Hunt, Schultz, and Reed in their individual capacities is denied.

### iv. Supervisor Liability of Chief Welsh

Plaintiff makes a claim against police chief Welsh in his individual capacity, claiming that Welsh allowed Elberton's police officers to follow a custom of providing only unsworn affidavits and unsworn police reports in support of their arrest warrant applications even though they expected that the judge's probable cause determination would be based solely upon these unsworn statements. In § 1983 actions, supervisor liability must be based on something more than the theory of respondeat superior. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). For a supervisor to be held liable

22

under § 1983, the supervisor must have personally participated in the alleged constitutional violation or there must be a causal connection between the supervisor's actions and the alleged constitutional deprivation. *Id.* The causal connection can be established when the supervisor is on notice of the need to correct the deprivation but fails to do so. *Id.* A few isolated occurrences of the deprivation will not suffice to put the supervisor on notice—the deprivations must constitute "widespread abuse." *Id.*

In this case, the evidence viewed in the light most favorable to Plaintiff establishes that City of Elberton police officers regularly applied for arrest warrants without providing a sworn statement to the issuing judge. Instead, the officers submitted unsworn warrant applications and unsworn police reports and expected the judge to make a probable cause determination based solely upon these documents. As discussed *supra*, a probable cause determination cannot legally be predicated upon unsworn statements, so this process is not constitutionally sound. The officers followed this process hundreds of times over a period of at least eight years. This history of widespread use of the unsworn warrant application process was sufficient to notify Welsh of the need to take corrective action. Furthermore, there is evidence that Welsh had firsthand knowledge of the process. However, Welsh failed to correct it. Genuine issues of material fact exist as to whether Welsh's supervisory conduct violated Plaintiff's constitutional rights. Moreover, the Court finds that

Welsh is not entitled to qualified immunity on this claim because at the time of Plaintiff's arrest, the law was clearly established that an officer's affidavit or other statement forming the basis for an arrest warrant must be made under oath.   For these reasons, Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claims against Welsh in his individual capacity is denied.

   c. *Plaintiff's Claims Against the City of Elberton*

   Plaintiff alleges that the City of Elberton followed a custom of allowing its officers to secure arrest warrants from the City Recorder without providing sworn testimony and that the City failed to adequately train its officers with regard to the proper procedure for securing arrest warrants.[5]

   A local government may not be held liable under § 1983 solely for the acts of its employees—§ 1983 liability must be predicated upon the acts of the *municipality*.   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   Therefore, for a city to be held liable under § 1983, the deprivation at issue must have taken place pursuant to

---

[5] Much of Plaintiff's failure-to-train argument centers upon possible violations of the Georgia warrantless arrest statute.   Specifically, Plaintiff claims that Elberton police officers were inadequately trained because some of them believed they were allowed to make a misdemeanor arrest even when the misdemeanor did not occur in the officer's presence or immediate knowledge.   Even if the officers *were* inadequately trained on Georgia's warrantless arrest statute, however, that alleged failure to train does not give rise to a § 1983 action because § 1983 only creates a remedy for wrongs committed under state law that deprive a person of a *federal* right.   *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). A police officer who violates a state arrest statute cannot be liable under § 1983 unless he also violated federal law regarding arrests.   *Id.*

city policy or custom. *Monell*, 436 U.S. at 694. To prove municipal custom, Plaintiff must establish a "widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Such a practice is deemed "authorized" by the policymaking officials if they "must have known about it but failed to stop it." *Brown*, 923 F.2d at 1481.

### i. Unsworn Warrant Application Process

As discussed *supra*, the evidence viewed in the light most favorable to Plaintiff establishes that City of Elberton police officers regularly applied for arrest warrants from the City Recorder without providing a sworn statement to the issuing judge. They were permitted to follow a process of submitting unsworn warrant applications and unsworn police reports to the judge, who would make a probable cause determination based solely upon these documents. The officers followed this process hundreds of times over a period of at least eight years, and there is evidence that Welsh had firsthand knowledge of this process but failed to stop it before Plaintiff's arrest. Therefore, it is reasonable to conclude that Welsh, the City's Chief of Police, authorized the unsworn warrant application process. It is also reasonable to conclude that Welsh knew of a need to train the City's officers in this area and made a deliberate choice

not to take any action to train the officers differently. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  For these reasons, the City of Elberton is not entitled to summary judgment with regard to its alleged unsworn warrant application process.

*ii. Decision to Hire Officer Kupkowski*

Plaintiff also alleges that the City's decision (through its decision maker, Welsh) to hire Officer Kupkowski resulted in a violation of Plaintiff's constitutional rights.  In support of this claim, Plaintiff offered evidence that prior to his employment with City of Elberton, Kupkowski was terminated from another police force, had been accused of using excessive force, and had been involved in a police chase in which two minors and one adult were killed.  However, Plaintiff has not presented evidence that Welsh's decision was part of a pattern of injuries linked to Welsh's hiring practices, nor has he presented evidence that meets the rigorous requirements of causation and culpability required to establish municipal liability under § 1983 for a single hiring decision.  *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 411-12, 415 (1997).  For the decision to hire Kupkowski to give rise to a § 1983 claim, Plaintiff must show that Kupkowski was highly likely to inflict the *particular* injury suffered by Plaintiff.  *See id.* at 412.  This connection must be strong—the specific constitutional violation must be a "plainly obvious consequence of the hiring decision." *Id.*  In this case, Plaintiff has accused Kupkowski of violating his federal

rights by applying for the warrant using an unsworn warrant application. No reasonable juror could find that Plaintiff's evidence regarding Kupkowski's prior employment establishes that the specific constitutional violation alleged by Plaintiff would be an obvious consequence of hiring Kupkowski. Therefore, municipal liability cannot be based upon Welsh's decision to hire Kupkowski, and Defendants' Motion for Summary Judgment is granted as to Plaintiff's federal claims based upon the decision to hire Kupkowski.

*3. Plaintiff's State Law Claims*

Plaintiff's state law claims against Defendants include the following: (1) assault, battery, trespass, and intentional infliction of emotional distress by Kupkowski for his conduct in the KFC parking lot, (2) false arrest by Kupkowski for his role in securing Plaintiff's arrest, (3) trespass, battery, false arrest, and false imprisonment by Schultz and Reed for their role in Plaintiff's arrest, (4) intentional infliction of emotional distress and negligent hiring and retention by the City of Elberton, and (5) violation of Plaintiff's rights under the Georgia constitution to be free from unlawful seizure and to due process.

*a. Liability of the City of Elberton*

Plaintiff's claims against Defendant officers in their official capacities are construed as claims against the City of Elberton and therefore raise the question of governmental immunity. *See Pearson v. City of Atlanta*, 231 Ga. App. 96, 101, 499 S.E.2d 89, 94 (1998).

Under Georgia law, a municipal corporation is immune from liability for the torts of its policemen engaged in the discharge of duties imposed on them by law *unless* the municipal corporation has waived its immunity by purchasing motor vehicle liability insurance. O.C.G.A. § 36-33-3 (2004); O.C.G.A. § 33-24-51 (2004); *Reese v. City of Atlanta*, 261 Ga. App. 761, 762, 583 S.E.2d 584, 585 (2003). A city's purchase of motor vehicle liability insurance only waives immunity to the extent of coverage and to the extent that a cause of action against the city arises out of the use of a motor vehicle. *Carter v. Glenn*, 249 Ga. App. 414, 416, 548 S.E.2d 110, 112 (2001). Plaintiff has presented no evidence that City of Elberton has waived its immunity by purchasing insurance. Even if there were evidence that the City had purchased insurance, Plaintiff's claims did not arise out of the use of a motor vehicle, so the City did not waive its immunity as to Plaintiff's state law claims. For these reasons, the City of Elberton is immune from suit and therefore entitled to summary judgment as to Plaintiff's state law claims based upon the alleged torts of its officers, including Plaintiff's claims of intentional infliction of emotional distress based upon publication of Plaintiff's arrest in a local newspaper and Plaintiff's claims of negligent hiring and retention.

b. *Liability of the Individual Defendants*

Under the doctrine of official immunity, city police officers are entitled to immunity for injuries caused in the performance of their

official functions *unless* they negligently perform a ministerial act *or* act with actual malice in the performance of a discretionary act. *Cameron v. Lang*, 274 Ga. 122, 124-125, 549 S.E.2d 341,345 (2001); *see* GA. CONST. art. I, § II, ¶ IX(d) (1983).  Whether official immunity applies is a question of law if the relevant facts are not in dispute. *Carter*, 249 Ga. App. at 416, 548 S.E.2d at 112.

> ### *i. Liability of Kupkowski for KFC Parking Lot Incident*

Plaintiff alleges that Kupkowski's conduct in the KFC parking lot gives rise to claims for assault, battery, trespass, and intentional infliction of emotional distress.   Kupkowski argues that he is entitled to immunity on these claims and that Plaintiff has failed to meet the elements of each tort.

First, the Court must determine whether Kupkowski is entitled to official immunity.   This turns on whether he was performing an official function when he approached Plaintiff in the KFC parking lot. At the time of the KFC parking lot incident, Kupkowski was off duty and out of uniform.   Georgia courts have found that some off-duty officers were executing their official duties when they took law enforcement action after observing violations of the law.  *See, e.g., Carr v. State*, 176 Ga. App. 113, 115, 335 S.E.2d 622, 624 (1985) (officers moonlighting as security guards at George Jones concert were executing official duties when they arrested George Jones fan for public drunkenness); *Duncan v. State*, 163 Ga. App. 148, 148-149, 294 S.E.2d 365, 366 (1982) (uniformed officer moonlighting as motel bar

bouncer was executing official duties when he subdued patron who became unruly and threatened to breach the peace).   Unlike the officers in *Carr* and *Duncan*, however, Kupkowski did not witness Plaintiff violate the law when Plaintiff left his engine running in the KFC parking lot and was therefore not justified in taking any law enforcement action against Plaintiff.   Although O.C.G.A. § 40-6-201, the statute which Kupkowski thought Plaintiff violated, prohibits leaving a vehicle unattended with the engine running, the statute does not apply to vehicles on private property.   It is irrelevant that Kupkowski *thought* Plaintiff's conduct violated the law.   An officer's mistake of law cannot provide reasonable suspicion to justify law enforcement action.   *See United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003) (finding that officer's mistake of law could not establish reasonable suspicion to justify traffic stop). The rationale for this rule is simple:  if a mistake of law *could* provide reasonable suspicion to justify law enforcement action, police officers would have no incentive to "'make certain that they properly understand the law that they are entrusted to enforce and obey.'" *Id*. at 1280 (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000)).  For these reasons, the Court cannot find that Kupkowski, an off-duty, out-of-uniform officer who took action against Plaintiff based on a misapprehension of the law, was executing his official duties at the time of the KFC parking lot incident.   Accordingly,

Kupkowski is not entitled to official immunity for his actions in the KFC parking lot.

Having found that Kupkowski is not entitled to official immunity, the Court must determine whether Plaintiff has met the elements of each tort.

a. Trespass.  Plaintiff alleges that Kupkowski committed the tort of trespass when he reached into Plaintiff's car and removed Plaintiff's keys.  Under Georgia law, trespass to personal property consists of "[a]ny unlawful abuse of or damage done to the personal property of another." O.C.G.A. § 51-10-3 (2004).  Typically, trespass to personal property involves a wrongful taking or detention of property, or damage to the property.  *See Lowery v. McTier*, 99 Ga. App. 423, 423, 108 S.E.2d 771, 772 (1959); Charles R. Adams, III, Georgia Law of Torts § 2-6 (2004).  In this case, there is no evidence of abuse of or damage to Plaintiff's car or keys.  Kupkowski did not dispossess Plaintiff of his car or his keys, he did not impair the condition of the car or the keys, and he did not deprive Plaintiff of the use of his car or his keys for a substantial period of time—he only had the keys in his hand for a moment.  For these reasons, Plaintiff has failed to make out a trespass claim, and Kupkowski is therefore entitled to summary judgment as to Plaintiff's trespass claim.

b. Intentional Infliction of Emotional Distress.  Plaintiff argues that Kupkowski's conduct in the KFC parking lot amounted to

intentional infliction of emotional distress.  To sustain a claim for intentional infliction of emotional distress, Plaintiff must prove that: (1) Kupkowski's conduct was intentional or reckless, (2) Kupkowski's conduct was extreme and outrageous, (3) Kupkowski's conduct caused Plaintiff's emotional distress, and (4) Plaintiff's emotional distress was severe.  *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616, 554 S.E.2d 783, 785 (2001).  All four of these elements must be met.  *Id.*  Even if the Court found that the first three elements were met—that Kupkowski's intentional conduct went beyond all reasonable bounds of decency and caused Plaintiff emotional distress—it could not find that the fourth element was met in this case.  To constitute "severe" emotional distress, the distress must be such that "no reasonable person could be expected to endure it." *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 331, 514 S.E.2d 669, 676 (1999).  Plaintiff's only evidence of emotional distress is that he was nervous and lost his appetite immediately after the KFC parking lot incident.  Plaintiff suffered no physical or pecuniary loss as a result of the KFC parking lot incident; he did not seek psychiatric treatment following the incident; and he admitted that he did not feel the incident caused him any mental trouble or emotional distress.  For these reasons, Plaintiff has failed to present evidence that would allow a reasonable jury to find that he suffered severe distress.  Therefore, Plaintiff has not made out a

case for intentional infliction of emotional distress, and Kupkowski is entitled to summary judgment as to this claim.

c. Assault and battery. Plaintiff claims that Kupkowski assaulted and battered him when he removed the keys from Plaintiff's car and threw them at Plaintiff. Kupkowski committed the tort of battery if he intentionally made unjustified harmful or offensive contact with Plaintiff, and he committed the tort of assault if he intentionally caused fear or apprehension of a battery. *See Vasquez v. Smith*, 259 Ga. App. 79, 82, 576 S.E.2d 59, 61 (2003). *Any* unlawful touching—even minimal contact—is actionable. *Darnell v. Houston County Bd. of Educ.,* 234 Ga. App. 488, 490, 506 S.E.2d 385, 388 (1998). Under Georgia law, "unlawful" contact is "offensive" contact, and "offensive" contact is contact that "proceeds from anger, rudeness, or lust." *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672, 347 S.E.2d 619, 621 (1986). The test for offensiveness is "'what would be offensive to an ordinary person not unduly sensitive as to his dignity.'" *Id.* (quoting Prosser, Law of Torts, § 9, p. 37 (4th ed. 1971)). As discussed *supra*, Kupkowski was not justified in removing Plaintiff's keys from the car and throwing them at Plaintiff. Plaintiff has presented evidence that Kupkowski was yelling when he turned off the car and threw the keys at Plaintiff, hitting Plaintiff in the chest. He has also presented evidence that Kupkowski got in Plaintiff's face and told Plaintiff, "I'm the last person in this city you want to fuck with." Based on this evidence, the Court concludes

that a jury question exists as to whether Kupkowski's conduct in the KFC parking lot constituted assault and battery.  Therefore, summary judgment is not appropriate on this claim.

*ii. Liability of Kupkowski for Warrant Application*

Plaintiff claims that Kupkowski's conduct in applying for the arrest warrant using an unsworn warrant application gives rise to claims for false arrest and for violation of Plaintiff's rights under the Georgia constitution to be free from unlawful seizure and to due process.  Because his act of applying for an arrest warrant was an official police function and was a discretionary act, *see Anderson v. Cobb*, 258 Ga. App. 159, 160, 573 S.E.2d 417, 419 (2002), Plaintiff must show that Kupkowski acted with actual malice in seeking the arrest warrant.  *See Cameron*, 274 Ga. at 124-125, 549 S.E.2d at 345. Actual malice is deliberate intention to do wrong.  *Delong v. Domenici*, 271 Ga. App. 757, 610 S.E.2d 695, 698 (2005).  The law will not presume malice from an illegal act alone.  *Corporate Property Investors v. Milon*, 249 Ga. App. 699, 706-707, 549 S.E.2d 157, 164 (2001) (finding that officer was not liable for arrest after sloppy investigation because there must be "not only an absence of probable cause, but also malice").  However, malice may be established if an officer's subjective feeling prompts him to intend to do a legally unjustifiable action.  *Delong*, 271 Ga. App. 757, 610 S.E.2d at 698. The facts viewed in the light most favorable to Plaintiff establish that Kupkowski deliberately intended to apply for the warrant for

Plaintiff's arrest using an unsworn warrant application.  As discussed *supra*, the law was clearly established at the time of the warrant application that an affidavit or other statement forming the basis for an arrest warrant must be made under oath.  As such, Kupkowski's warrant application was legally unjustifiable.  Based upon the unlawful warrant application and because it is reasonable to conclude from the facts viewed in the light most favorable to Plaintiff that Kupkowski had some ill will toward Plaintiff that may have prompted him to apply for the warrant, the Court finds that genuine issues of material fact exist as to whether Kupkowski acted with malice when he applied for the arrest warrant.  For this reason, Kupkowski is not entitled to official immunity as a matter of law for his act of applying for the arrest warrant.

The Court must now determine whether Plaintiff has met the elements of each claim arising from the unsworn warrant application.

1. False arrest.  A cause of action for false arrest exists under Georgia law for an arrest made maliciously and without probable cause. O.C.G.A. § 51-7-1 (2004); *Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 74, 532 S.E.2d 463, 467 (2000).  For the purposes of a false arrest claim, lack of probable cause exists "when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." O.C.G.A. § 51-7-3 (2004).  Although the question whether there was lack of probable cause is generally a question for the jury, the Plaintiff must raise

some evidence creating an issue of fact as to whether there was lack
of probable cause.  *Franklin v. Consolidated Gov't of Columbus*, 236
Ga. App. 468, 470, 512 S.E.2d 352, 356 (1999).

Here, Plaintiff quarrels not with the underlying facts giving
rise to Kupkowski's determination that there was probable cause to
arrest him under the disorderly conduct ordinance but with Kupkowski's
interpretation of the ordinance.  He argues that Kupkowski had no
probable cause for arrest because Kupkowski "had to know," after
consulting with Magistrate Judge Simmons regarding the Georgia
terroristic threats statute, that there was no probable cause under
the City of Elberton disorderly conduct ordinance.  However,
Magistrate Judge Simmons did not tell Kupkowski that there was no
probable cause under the disorderly conduct ordinance.  She advised
him to consult the ordinance or to consult the City attorney to
determine whether there was probable cause under the ordinance.
Kupkowski elected not to consult the attorney.  Rather, he relied upon
his own recollection of the disorderly conduct ordinance and
determined that there was probable cause to arrest Plaintiff under the
ordinance.  The ordinance on its face does not require that the threat
be made in the victim's presence, and Plaintiff made the statement to
Kupkowski's colleagues, whom Plaintiff could reasonably expect to
convey the message to Kupkowski.  *Cf. Wiggins v. State*, 171 Ga. App.
358, 358-360, 319 S.E.2d 528, 529-531 (1984) (noting, in the context
of Georgia's terroristic threats statute, that a threat need not be

36

directly communicated to the victim to support a conviction so long as "the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim"). Furthermore, the ordinance is reasonably interpreted to prohibit "threats of violence" that place a city official in immediate fear of becoming the victim of violence at some later point.

The facts of this case, for summary judgment purposes, are that Plaintiff went to the police station and, upset but without yelling or creating a scene, told Hughes and Fant that Kupkowski had better stop harassing Plaintiff "because he going to get what's coming to him." It has also been established that Fant, a police department employee, told Kupkowski that Plaintiff came to the station agitated and said something like, "[Kupkowski] better watch his back at night" or "[Kupkowski] better watch himself or he's going to get hurt." The evidence also shows that Kupkowski had stopped Plaintiff for traffic violations on two separate occasions during the week or two prior to the KFC parking lot incident, that Kupkowski believed Plaintiff was involved in drug activity, and that the tension between Kupkowski and Plaintiff had increased since Plaintiff's first encounter with Kupkowski. Even viewing these facts in the light most favorable to Plaintiff, there was sufficient evidence to provide probable cause for Plaintiff's arrest under Kupkowski's reasonable interpretation of the ordinance. Plaintiff has not raised any facts that counsel a different conclusion. Therefore, Plaintiff has failed to carry his

burden of showing lack of probable cause, and Kupkowski is entitled to summary judgment on the false arrest claim.

2. Violation of Plaintiff's rights under the Georgia constitution. Plaintiff has alleged that Kupkowski's warrant application violated his right to due process under the Georgia constitution. *See* GA. CONST. art. I, § I, ¶ I. Plaintiff has not explained his theory of liability on this claim, and the Court cannot find that the warrant application violated Plaintiff's due process rights. Accordingly, Kupkowski is entitled to summary judgment on this claim. Plaintiff also claims that Kupkowski's warrant application violated his right under the Georgia constitution to be free from unlawful seizure. *See* GA. CONST. art. I § I ¶ XIII. The Georgia constitution's provisions regarding unreasonable search and seizure are co-extensive with the provisions of the United States Constitution's Fourth Amendment and are construed the same way by the Georgia courts. *State v. Kirbabas*, 232 Ga. App. 474, 480, 502 S.E.2d 314, 320-321 (1998). Because genuine issues of fact exist as to whether Kupkowski violated the Fourth Amendment, the Court concludes that Kupkowski is not entitled to summary judgment as to the state unreasonable seizure claim.

*iii. Liability of Schultz and Reed for Plaintiff's Arrest*

Plaintiff alleges that Schultz and Reed's conduct in arresting him gives rise to claims for trespass, battery, false arrest, false imprisonment, and violation of Plaintiff's rights under the Georgia

38

constitution to be free from unlawful seizure and to due process. Additionally, Plaintiff has alleged that Kupkowski was present when Plaintiff was arrested and that he participated in the actual arrest. It is now undisputed that Kupkowski did not participate in the arrest. Therefore, Kupkowski is entitled to summary judgment as to all state law claims against him based on the physical arrest of Plaintiff, and the only remaining state law claims based on the physical arrest of Plaintiff are against Schultz and Reed. Schultz and Reed argue that they are entitled to immunity and that Plaintiff has failed to meet the elements of each tort.

It is undisputed that Schultz and Reed were acting in an official function as police officers when they arrested Plaintiff. Schultz and Reed contend that they were acting in a discretionary function when they arrested Plaintiff and that they are therefore entitled to official immunity unless Plaintiff can show they acted with malice. *See Cameron*, 274 Ga. at 124-125, 549 S.E.2d at 345. Plaintiff argues that Schultz and Reed are not entitled to immunity because effectuating the arrest pursuant to the warrant was a ministerial act which they performed negligently. *See id.*

A ministerial act is one that is "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty," while a discretionary act is one which "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned

conclusions, and acting on them in a way not specifically directed." *Meagher v. Quick* 264 Ga. App. 639, 642, 594 S.E.2d 182, 185 (2003). For an act to be ministerial, the procedures or instructions calling for the act must be "so clear, definite, and certain as merely to require the execution of a relatively simple, specific duty." *Smith v. Chatham County*, 264 Ga. App. 566, 569, 591 S.E.2d 388, 391 (2003). A police officer's decision to make a warrantless arrest is generally considered discretionary, as is the decision to apply for a warrant. *Reed v. DeKalb County*, 264 Ga. App. 83, 86, 589 S.E.2d 584, 587 (2003); *Anderson*, 258 Ga. App. at 160, 573 S.E.2d at 419. And while establishing a policy is discretionary, acts of following established policies are generally considered ministerial. *Carter*, 249 Ga. App. at 417, 548 S.E.2d at 113; *see also Washington v. Dep't of Human Resources*, 241 Ga. App. 319, 321, 526 S.E.2d 354, 356 (1999) (finding that action of bathing patient was ministerial because caregiver had specific duty to bathe patient). In this case, neither Schultz nor Reed made a decision to arrest Plaintiff based on an independent finding of probable cause. They were clearly and specifically instructed to effectuate Plaintiff's arrest pursuant to the warrant, and they followed that instruction. There was no call for any personal deliberation on the part of Schultz or Reed as to whether the arrest was proper. For these reasons, the Court finds that the act of arresting Plaintiff pursuant to the warrant was ministerial. The Court further finds that a fact issue exists as to whether the

40

officers were negligent in arresting Plaintiff pursuant to the unsigned warrant and that Schultz and Reed are therefore not entitled to official immunity on Plaintiff's state law claims.

The Court must now determine whether Plaintiff has met the elements of each claim arising from his arrest pursuant to the unsigned warrant.

1. False arrest. A cause of action for false arrest exists under Georgia law for an arrest made maliciously and without probable cause. O.C.G.A. § 51-7-1; *Desmond*, 243 Ga. App. at 74, 532 S.E.2d at 467 (2000). For the purposes of a false arrest claim, "malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51-7-2 (2004). Malice is not presumed simply because an officer does an illegal act in the discharge of his legal functions. *Franklin*, 236 Ga. App. at 471, 512 S.E.2d at 356. In this case, Plaintiff has not pointed to any evidence tending to show that Schultz and Reed acted with malice in arresting him. Though the evidence may establish that Schultz and Reed were negligent or even reckless with regard to Plaintiff's rights when they arrested him pursuant to the unsigned warrant, that is not enough. By definition, a negligent or reckless act cannot be malicious because acting with malice is an intentional rather than a careless or reckless act. Therefore, the malice element of the false arrest claim has not been established, and Schultz and Reed are entitled to summary judgment on this claim.

2. False imprisonment.  "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20 (2004).  It is not necessary to show malice and lack of probable cause—it is only necessary to show that there was an imprisonment and that the imprisonment was unlawful.  *Scott Housing Systems, Inc. v. Hickox*, 174 Ga. App. 23, 26, 329 S.E.2d 154, 157 (1985).  Here, there is no dispute that Plaintiff was imprisoned when he was arrested, placed in handcuffs, transported to the city police department and held in a cell.  Schultz and Reed contend that the imprisonment was lawful because the arrest was made pursuant to a warrant.  However, the warrant was never signed by a judge, and, as discussed *supra*, absent a signature or other communication from Judge Johnson, Schultz and Reed could not reasonably believe that the warrant had actually been issued based on probable cause as required by the Fourth Amendment and Georgia law. Because there is evidence that the warrant was never issued or secured, Schultz and Reed cannot rely upon the warrant to maintain that the arrest was lawful.  Therefore, for the arrest to be lawful, Schultz and Reed must be able to establish that they had probable cause to believe the charged offense had been committed, and they must also justify the arrest under one of the warrant requirement exceptions enumerated in O.C.G.A. § 17-4-20(a) (2004).  *See Amason v. Kroger Co.*, 204 Ga. App. 695, 696-697, 420 S.E.2d 314, 315-316 (1992).  This, they cannot do based on the record.

The Court therefore concludes that summary judgment is not appropriate as to Plaintiff's false imprisonment claim against Schultz and Reed.

3. Battery.  Schultz and Reed committed the tort of battery if they intentionally made unjustified harmful or offensive contact with Plaintiff, and any harmful or offensive touching, even minimal contact, is actionable.  *See Vasquez*, 259 Ga. App. at 82, 576 S.E.2d at 61; *Darnell,* 234 Ga. App. at 490, 506 S.E.2d at 388.  Offensiveness is judged under a reasonable person standard.  *See Newsome*, 179 Ga. App. at 672, 347 S.E.2d at 621.  As discussed *supra*, the evidence in the record establishes that Schultz and Reed were not justified in arresting Plaintiff, so they were not justified in using any force against him.  *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (noting that if an arrest is illegal, there is no basis for any use of force); *cf. Smith v. Holeman*, 212 Ga. App. 158, 160, 441 S.E.2d 487, 491 (1994) ("A police officer assaults a person by attempting an unlawful arrest with force.").  The evidence shows that Schultz and Reed handcuffed Plaintiff and transported him to the Elberton police department.  A reasonable jury could conclude that this contact is offensive and therefore constitutes battery under Georgia law. Therefore, Schultz and Reed are not entitled to summary judgment on this claim.

4. Trespass.  A cause of action for the tort of trespass exists when a person unlawfully interferes with another person's right of enjoyment of private property.  O.C.G.A. § 51-9-1 (2004).  The right

of enjoyment of private property includes the right to exclude others from using the property.  As discussed *supra*, the evidence in the record establishes that Schultz and Reed were not justified in arresting Plaintiff, so they had no right to enter Plaintiff's property without consent.  For this reason, a jury could conclude that their entry into Plaintiff's home constituted trespass, and summary judgment is not appropriate as to this claim.

5.  Violation of Plaintiff's rights under the Georgia constitution.  Plaintiff has alleged that his arrest by Schultz and Reed pursuant to an invalid warrant violated his right to due process under the Georgia constitution.  *See* GA. CONST. art. I, § I, ¶ I. Plaintiff has not explained his theory of liability on this claim, and the Court cannot find that the arrest violated Plaintiff's due process rights.  Accordingly, Schultz and Reed are entitled to summary judgment on this claim.  Plaintiff also claims that Schultz and Reed violated his right under the Georgia constitution to be free from unlawful seizure when they arrested him pursuant to an invalid warrant.  *See* GA. CONST. art. I § I ¶ XIII.  The Georgia constitution's provisions regarding unreasonable search and seizure are co-extensive with the provisions of the United States Constitution's Fourth Amendment and are construed the same way by the Georgia courts.  *Kirbabas*, 232 Ga. App. at 480, 502 S.E.2d at 320-321. Because genuine issues of fact exist as to whether Schultz and Reed violated the Fourth Amendment, the Court concludes that Schultz and

44

Reed are not entitled to summary judgment as to the state unreasonable seizure claim.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **denied** as to the following claims: § 1983 claims against Kupkowski, Hunt, Schultz, Reed, and Welsh in their individual capacities; § 1983 claims against the City of Elberton insofar as those claims are based on a policy or custom of using an unsworn warrant application process; state law claims against Kupkowski for assault, battery, and violation of Plaintiff's rights under the Georgia constitution to be free from unlawful seizure; and state law claims against Schultz and Reed for false imprisonment, battery, trespass, and violation of Plaintiff's rights under the Georgia constitution to be free from unlawful seizure.

Defendants' Motion for Summary Judgment is **granted** as to the following claims: § 1983 claims against the City of Elberton insofar as those claims are based on the decision to hire Kupkowski; all state law claims against the City of Elberton; state law claims against Kupkowski for trespass, intentional infliction of emotional distress, false arrest, violation of Plaintiff's due process rights under the Georgia constitution, and any state law claims based upon the physical arrest of Plaintiff; and state law claims against Schultz and Reed for false arrest and violation of Plaintiff's due process rights under the Georgia constitution.

45

IT IS SO ORDERED, this 1st day of July, 2005.

                                        S/Clay D. Land
                                            CLAY D. LAND
                                        UNITED STATES DISTRICT JUDGE